Good morning. My name is Seth Aframe and on behalf of Judge Thompson and myself, we are very glad that Judge Hamilton from the Seventh Circuit has agreed to come and participate with us in the Puerto Rico sitting. This is my first time in Puerto Rico as the presiding judge and I just want to say it is both my privilege and honor to do so. And so with that we can call the cases. Thank you, Judge. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 221950, United States v. José Padilla-Galarza. Counsel for appellant, please come up and introduce yourself on the record to begin. Good morning, Your Honor, members of the court. Attorney Rafael Castro Lang, court-appointed counsel for José Padilla-Galarza. Your Honor, in preparing for this argument, I studied the brief and the reply concerning all of the crucial material contradictions and omissions that occurred in this case. If I were to argue them now, it would take from half an hour to 45 minutes. So I'm going to concentrate on procedural errors that I believe warrant granting a new trial. The first error, which I consider to be a material error of law, concerns the district court's refusal to award compensation to the private investigator for counsel to go interview witnesses. The interviews of witnesses are crucial in this case. It was a credibility case, Your Honor, and quite frankly, counsel will not interview a witness without the presence of a private investigator. Your Honor, the private investigator is necessary to provide effective assistance of counsel because during the interviews there may be new evidence that arises. Counsel. Impeachment evidence. I mean, the specific request that you're arguing about occurred a month before trial was scheduled to begin, and this is a very old case. Yes, Your Honor. And the court didn't deny it. The court said come back with a better reason for requesting it. Well, Your Honor, it thinks... So the first question is why was there such a delay in the request in the first place so close to trial? Well, Your Honor, I don't think the delay, there is a delay. The problem is that on April 15th we were provided drinks. The electricity was off at MDC from the 15th to the 17th, so it wasn't until the 18th that I was able to interview Padilla-Galarza. And Samuel Figueroa, that's when we found out Samuel Figueroa was a witness, and from a reading of the drinks it was obvious that we needed to investigate and locate witnesses that would contradict the version of events he gave. So to say that this is an old case, yes, it's true it's an old case, but at the last minute we were inundated with motions and discovery, plus the jinx, which warranted a continuance, Your Honor. The government, there were 18 motions filed between April 8th and April 21st. Eight were filed by the government and ten by the defense. I did not have the benefit of law clerks helping me out. I didn't have an investigator because the judge ruled that that was not compensable services. I thought the investigator was still doing work, though. I mean, was still helping you. The investigator assisted freely to subpoena witnesses and deliver to-he letters. Aside from this case, he had other cases, but it was impossible, and the record is clear, and it was impossible to locate the witnesses and much less interview them if they were located because the court was not going to compensate the investigator for such services. And it's obvious, Your Honor, that the investigator has to be present for numerous reasons. Number one, if I did this alone, I could become a witness if I had to contradict what someone said. The district judge's thoughts were, well, this appeared to be a fishing expedition to the extent that there really wasn't sufficient specificity about what you were looking for. Your client knew the defendant, sorry, knew the witness well, and so there really wasn't demonstrated to the court the reasons for having the additional costs for the investigator. Why is that wrong, or why is that an abuse of discretion, actually? I disagree with the judge's reasoning because, in fact, because the defendant knew Figueroa, there was a substantial amount of impeachment information that could be developed that we couldn't do in the period of time we had available, Your Honor. So to say that we had sufficient time is incorrect. We didn't have sufficient time. Could you say more about what you think could have been developed? I mean, the fact that he knew him and that they were friends meant that he knew things about him. Yes, Your Honor. This is an old case, and precisely because it's an old case, it was difficult to locate witnesses, and at least it's my practice to try to interview witnesses prior to trial because my position is that's reversible error in failing to grant funds for a private investigator to assist a lawyer at trial, Your Honor. Well, these were extra funds. Funds were granted, right? So the issue is not there were no funds. There were funds. The funds were exhausted, right? And then there's a heightened standard to get more funds. Yes, Your Honor. So your position is that because Figueroa was late announced, you needed more funds to get more impeachment. Now, you did impeach Figueroa, correct? Yes. But you did, right? Well, I did the best I could, Your Honor. Let's put it this way. I could have done better. And, Your Honor, a continuance here should have been granted. As appears from my brief, as a result of my inability to study with detail the discovery, counsel did not confront the witness concerning what he did that night. At trial, Ramos testified he was at the beach observing. During the PSR interview, he said he wasn't present because he was driving around the area. That was a pretty good impeachment that I was not able to produce. In addition to that, Your Honor, when you interview a witness, you have the opportunity to develop evidence to clarify events that occurred many years ago. For example, if I had been able to interview... See, here's my problem with this case. I look at a case from 2015 with a million motions filed by everybody involved, lots of delay, lots of delay. At some point, there has to be a trial. And you can always say I could do more, but I guess you did impeach Mr. Figueroa. You did impeach all these people. Your brief goes in great detail, taking us through all the impeachment you did. And your point really seems to be I could have done more. And I guess the fundamental thing I'm struggling with is that's always true. That is always true. But at some point, this case pended for like a lot of years. It has to end. And I mean, there's something on the side of the judge taking some control of what seemed like an unruly docket to me. I understand that. But here the judge did not have a docket conflict, Your Honor. And each case has to be decided on the facts presented. For example, had I been able to interview policewoman Ayala before trial, I would have reviewed with her her testimony before the FBI agents concerning what she saw that night, for she emphatically denied. Sorry, but just as an example, you knew of her existence for a long time. Why didn't you interview her? I mean, maybe she didn't want to be interviewed by you. She doesn't have to be interviewed by you. I don't understand. How is this ever going to stop? I was requesting funds since 2020. They were repeatedly denied. Thank you, Counsel. Yes, Your Honor. Thank you, Counsel. Will Counsel for Appley please come up and introduce yourself on the record to begin? May it please the Court, I'm Anne O'Connell Adams for the United States. The crimes in this case were committed in 2010, indicted in 2015, and proceeded to a bench trial in 2022. The District Court did not abuse its discretion in declining to grant that final 30-day continuance right before the trial. The issue is about... What was the reason for such late disclosure by the government? There's a couple of things that are talked about in the briefs in terms of late disclosure. There were two things that the District Court discussed both in the written order on April 13th and in the hearing on April 20th. That was this 11-page AT&T phone record. And that was simply a document that the prosecutors came across when preparing Oquendo for trial and realized it hadn't been yet turned over. It was something that the Puerto Rico Police Department obtained on the day the robbery happened from AT&T. And so that was one thing that was late disclosure. It was 11 pages. It was extensively discussed at that hearing. And then the other late disclosure, which wasn't late at all, was the Jenks material, where Mr. Padilla found out that Figueroa would be testifying at trial. The one that concerns me is Figueroa. So at the very... Despite the timeline you played out, which is seven years, a few days before the trial, the other side learns that there will be another witness who will put the finger on the defendant. And the answer is we just learned that now, despite this crazy long timeline, and we would like to investigate this guy. And that doesn't strike me as entirely unreasonable. Well, Your Honor, I think there's a couple of things here. One is that the defendant... The government doesn't have any obligation to disclose its witnesses before they testify. It gives... Right. You didn't violate a rule. That's not the issue. The issue is, okay, you exercise your rights as you had them, but there's a concomitant right to then have an adversarial proceeding about that, which then requires some investigation. I think that's what he's saying. Yes. And it wasn't that the United States withheld this witness for seven years. This was a witness that only became a cooperator in the very last stages before the trial. He wasn't charged in this case. The United States didn't have... And he's still not responsive to what I'm saying. What I'm saying is, yes, whatever happened, happened. You said, here's our witness. He's going to say some pretty bad things about the defendant. And the response is, okay, we'd like to go look for information about this to try to challenge it in an adversarial proceeding. My focus question is, you did everything right, let's say, and I assume you did. Why is that an unreasonable request that should have been denied? Well, the district court did grant a short continuance in order to brief the statute of limitations motion. The court didn't grant the full 30 days, but the court did continue the trial, I think, from a Monday to a Thursday. And as the district court explained, the government did comply with its obligations. This was early Jenks material. The defendant knew this witness well. They did a bank robbery together, and they knew each other practically their whole lives. And the prosecutors comment at the hearing that Mr. Padilla knows this witness better than we do. We had just interviewed him and obtained his cooperation shortly before the trial. And so Mr. Padilla also hasn't shown prejudice on this. I think as the questions sort of got to, we don't know which witnesses he would have located if he had an additional 30 days. And so there has to be a- How would he show that to us? What do you expect him to do exactly? He didn't get discover. He didn't get the request denied. There was no continuance. There were no fees. So he doesn't get to go do anything. And now your answer is the reason he loses is because he wasn't able to tell us what he would have done had he got those things? Well, the case law does require a specific showing of prejudice to show that there was an abuse of discretion in denying a continuance. And so, yes, I think so. How would he do that? Just explain it to us. I think he would say, I would have found this witness who could have testified about this, something like that. This was, as the district court explained, more of a fishing expedition. We want to go find some witnesses. And it's, you know, under the case law of Jenks and the Jenks order in this court, we produced the Jenks material revealing who the witness was a day before the court's deadline. What day was that? It was April 15th. And the trial was what date? The trial started on the 21st. And Mr. Figueroa also was not one of the first witnesses. And I know that the investigator, as your honors pointed out, was still working. The United States, there was no specific. It might be that it didn't matter. How many cooperators were there? There were a lot of cooperators. So, I'm happy to go, there were. How many cooperators? There were two cooperators that were charged in the indictment. How many people testified against Mr. Padilla-Gallaraza who said he organized this robbery? Mr. Oquendo was the police officer who was lured away from the shooting range that night by Mr. Padilla. He testified that Padilla confessed to him that night and said, I did it, threatened his children. Ramos, who served as the lookout that night, testified that he and Padilla planned the robbery together for two years. They made a Crown Victoria look like a police car. They recruited and outfitted the robbers, coordinated with each other by phone the night of the robbery. Cosme, the private security guard who let the police car onto the grounds, testified that Mr. Padilla called him repeatedly that night saying a cousin was going to drop off Halloween costumes. Make sure you don't leave your post because he wanted to be sure that somebody was there to unlock the gate when the police car came. And then there's Figueroa, the longtime friend who said Mr. Padilla arrived at his house at 4.30 that morning with a car full of guns, asking him to help transport them to somewhere else. And the phone records corroborated all of these things. And so the additional impeachment of Figueroa, I think, would not have helped. There was more than sufficient evidence to convict Mr. Padilla of all of these crimes. As far as the request for funds, there was no specific request made at the hearing. And I think as the filings in this case show, the United States doesn't have access to those ex parte filings. So we've done the best we could in our brief to show that some of those motions for funds were granted. But there was not a specific request made at that last status conference where the 30 day continuance was requested. I want to talk briefly about the statute of limitations just to make sure that the court is okay with that or doesn't have any questions about that issue. The issue here is whether the superseding indictment, which added a substantive Hobbs Act robbery count and subbed in that offense for the 924C predicate, materially broadened or substantially amended the charges against- Tell me if I'm right about this. My thinking was that the way you changed it actually put more elements on the government than it had in some sense previously. Like under the conspiracy, you wouldn't actually have to prove the robbery happened. But as an aider and abetter, you would. That's right. So yes, the government would have to prove more and all of the indications in the case law cited by the other side, I think V is the main case that Mr. Padilla relies upon. There's a new statute charged or something with a greater sentence involved or something like that. And here the Hobbs Act conspiracy and the completed Hobbs Act robbery were charged under the same statute. That's a zero to 20 years for both of them. The 924C count isn't new. It's just a new predicate that's being subbed in because of the intervening Supreme Court case law. And the 924C count was actually narrowed to the original indictment contained a brandishing charge that wasn't included in the superseding indictment. So that made the minimum sentence for that go down from seven years to five years. And the factual allegations underlying the conspiracy and the completed robbery were exactly the same. In fact, the conspiracy charge in the original indictment charged the completed Hobbs Act robbery as the object of the conspiracy and alleged that the robbery happened. So there was no expansion of the facts or anything like that. Does it matter that the amendment expanded the defendant's exposure in sentencing? We don't think it did. I mean, he received a concurrent sentence. It depends on the law, right? Yes. It depends on the Supreme Court's decisions. Right. He received concurrent sentences for the Hobbs Act conspiracy and the robbery, which were the ones with the 20-year max which he received. And then, as I said, it didn't expand his liability or his potential sentencing exposure on 924C because the original indictment contained that brandishing charge and the second one did not. But the first one would not have been valid. That's right. That's correct. But I think that... My question is, in essence, why isn't that change in maximum sentencing exposure with the consecutive sentence prejudice that should count in our analysis of the statute of limitations issue? At the time that the... May I answer the question? At the time the indictment was returned, Hobbs Act conspiracy was a valid predicate under First Circuit case law. I think the case I'd point the court to for the best comparable circumstances is the Ojedicoon case from the Fourth Circuit from just a couple of years ago where it was a money laundering conspiracy with an invalid specified unlawful activity charged in the original indictment. And that wasn't even an intervening Supreme Court case that invalidated it. It was just a mistake. And the prosecutors fixed it before the trial and put in wire fraud as the specified unlawful activity and the Fourth Circuit said that that was fine. Thank you.